IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALLACE DEEN-MITCHELL, | : | Civil No. 1:11-cv-1902 |
| | : | |
| Plaintiff, | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| HARLEY LAPPIN, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**I.     Factual Background**

For nearly ten years this *pro se* prisoner lawsuit brought by Wallace Deen-Mitchell, a federal inmate, has been pending against more than 70 individual defendants. (Doc. 1.) For more than five years, Deen-Mitchell's *in forma pauperis* privileges have been revoked, the district court having found in 2014 that the plaintiff incurred "three strikes" prohibiting him from enjoying these privileges due to his past history of feckless, meritless litigation. (Docs. 145, 174.) The effect of this 2014 ruling was to place Deen-Mitchell on notice that he was now responsible for paying the filing fee required by law if he wished to further pursue this litigation.

Despite this 2014 ruling, Deen-Mitchell has yet to pay the filing fee which is now a prerequisite to pursuing this lawsuit. Deen-Mitchell has relied upon a number of different means to defer and delay the submission of this filing fee. Thus, on

1

October 6, 2014, Deen-Mitchell informed the Court that he had been transferred to the District of Columbia under a writ of habeas corpus *ad prosequendum* for further criminal proceedings. According to Mitchell, due to this transfer he was unable to prosecute the instant lawsuit because he did not have access to his inmate account with the BOP and his legal materials were maintained in storage at the United States Penitentiary Florence. (Doc. 177.) In recognition of these circumstances, the district court statistically closed this case without prejudice to Deen-Mitchell reopening it upon his return to Bureau of Prisons' custody. (Doc. 182.)

Deen-Mitchell has apparently remained in D.C. custody over the past five years. During this time, it appears that the plaintiff came into possession of a substantial sum of money, since at his request on September 12, 2016 the BOP sent a check to Deen-Mitchell in the amount of $242.35 at the D.C. Department of Corrections, which was endorsed by the D.C. Department of Corrections for deposit. (Doc. 185, Exh. 1, Attach. A.) It also appears that Deen-Mitchell has actively pursued other *pro se* litigation while in D.C. custody. (Doc. 185 at 2-3.) Furthermore, at no time during the past five years has Deem-Mitchell sought to the transfer of the legal materials held by the BOP at USP Florence. (Id., Exh. 2.)

On April 10, 2019, the Government reported these facts to the court. (Id.) After receiving a response to the Government's notice from Deen-Mitchell, (Doc. 187), the district court entered an order on May 22, 2019 which provided as follows:

AND NOW, this 22nd day of May, 2019, upon consideration of the court's order (Doc. 178) of October 6, 2014, wherein we acknowledged the representations of *pro se* plaintiff Wallace Deen-Mitchell ("Deen-Mitchell") that he was *temporarily* incarcerated at the Central Detention Facility (DC Jail) in Washington, D.C., while pursuing certain challenges to his criminal convictions, and as such was without access to funds in his inmate account at Federal Correctional Institution, Florence, Colorado ("FCI Florence"), (see id.; see also Doc. 177 at 2), and wherein we held this matter in abeyance, at Deen-Mitchell's request, pending his return to FCI Florence, (see Doc. 178 ¶ 1), and further upon consideration of the court's order (Doc. 186) of April 11, 2019, entered upon receipt of notice by defendants that all funds in Deen-Mitchell's inmate account had been returned to him by the Federal Bureau of Prisons ("BOP"), wherein the court directed Deen-Mitchell to show cause why this matter should not be dismissed for failure to prosecute as a result of Deen-Mitchell's failure to pay the filing fee, and the court having received a response to the show cause order, wherein Deen-Mitchell challenges the reopening of this matter not on grounds of inability to pay, but with speculation that "defendants are attempting to distract the plaintiff from his trial proceedings, and/or find a way to dispose of this matter while plaintiff has his back turned," (Doc. 187 at 3), but the court concluding that defendants' notice was provided to the court in good faith, and in recognition of the fact that the court extended deference to Deen-Mitchell based on his alleged lack of access to his inmate trust fund account and not on the basis of the inconvenience of litigating two matters simultaneously, and the court further concluding that this deference cannot be unlimited and that, after more than four years, this action must either proceed or be dismissed, it is hereby ORDERED that:

1. The Clerk of Court is directed to REOPEN the above-captioned action.

2. Deen-Mitchell shall pay the applicable filing fee in full within 30 days of the date of this order or this action will be dismissed.

(Doc. 188.)

In response to this clear direction from the court, Deen-Mitchell has now filed two motions: (1) a motion to reconsider or afford the plaintiff relief from this May 22, 2019 order, and (2) a motion to sanction the government. (Docs. 189, 191.)[1] The thrust of these motions is that Deen-Mitchell claims that he has not personally received the funds that the Government has shown were issued to him and placed on deposit by the D.C. Department of Corrections in 2016. Accordingly, Deen-Mitchell cites his lack of resources as a reason to deny enforcement of the court's longstanding orders directing him to pay the filing fee in this litigation. Deen-Mitchell also insists that his inability to trace the funds which were evidently deposited by the D.C. Department of Corrections somehow constitutes sanctionable misconduct by the Government.

These motions have been briefed by the parties, (Docs. 190, 192, 193, 194), and have been referred to the undersigned as part of our pre-trial management responsibilities. (Doc. 195.)

For the reasons set forth below, the motions will be denied.

## II. Discussion

Presently before us are two motions: First, a motion asking that we reconsider an order directing Deen-Mitchell to make timely payment of the filing fee in this

---

[1] We note that this is not the first time in the course of this litigation in which Deen-Mitchell has resorted to filing motions for relief from judgment and for sanctions. (Docs. 147, 163.)

case some five years after his *in forma pauperis* privileges were revoked due to his past abuse of those privileges, and, second, a motion to sanction the government because Deen-Mitchell claims that he has not enjoyed the benefit of the funds that the Government has shown were transferred to D.C. and endorsed for deposit by the D.C. Department of Corrections in 2016.

Turning first to Deen-Mitchell's motion to reconsider the latest order directing him to pay the filing fee in this case, (Doc. 189), the legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either : "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice." Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the

> court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

In the instant case, Deen-Mitchell cites to no intervening change in the law which would make reconsideration appropriate here. Rather, it appears that Deen-Mitchell remains what he has been for the past five years—an inmate whose history of frivolous filings now prevents him for exercising the privileges of a *pro se in forma pauperis* inmate litigant. Nor do we believe that the instant motion discloses

the availability of new evidence that was not available when the court entered its May 22, 2019 order or the need to correct a clear error of law or fact or to prevent manifest injustice. On this score, while Deen-Mitchell complains that he did not receive the benefit of the funds that the Government has clearly shown were endorsed for deposit by the D.C. Department of Corrections in 2016, much of what Deen-Mitchell proffers in his declaration in support of these motions is inadmissible hearsay that he attributes to various correctional officials. Aside from the hearsay quality of this declaration, Deen-Mitchell's contentions do not show that the Government falsely claimed that these funds were transferred to him at the D.C. Department of Corrections. Instead, at most, Deen-Mitchell has shown that those funds, which were clearly transferred to him in D.C. custody, have not been properly credited to him by D.C. officials.

Moreover, none of these declarations by Deen-Mitchell change the basic, immutable fact that for the past five years under the law, he has been required to pay the filing fee prescribed by statute if he wishes to pursue this litigation. Therefore, in a very real sense, Deen-Mitchell's complaints that D.C. officials may have misapplied the money transferred to him in 2016 misses the broader point that, for many years, he simply has been under a legal duty to pay this fee as a prerequisite to pursuing this lawsuit. Indeed, Deen-Mitchell's current position, if embraced by this court, would render the "three strikes" provision of 28 U.S.C. § 1915(g) largely

a nullity. At bottom, Deen-Mitchell seems to assert that, because he is unable financially to pay the filing fee, this court may not insist that he pay the fee required by law.

This assertion is simply wrong. Rather, it is clearly established that: ["[t]he 'three strikes' provision does not bar disqualified inmates from filing additional actions, but it does deny them the opportunity to proceed under *in forma pauperis,* requiring the inmates to pay the full filing fee prior to commencing suit." Harris v. Beard, No. CIV. 1:CV-06-0934, 2007 WL 404042, at *1 (M.D. Pa. Feb. 1, 2007). Simply put, "[s]ection 1915(g) does not prevent a prisoner with 'three strikes' from filing a civil action; *he or she is simply unable to enjoy the benefits of proceeding I.F.P. and must pay the fees at the time of filing instead of under the installment plan*." Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (emphasis added). The practical import of Deen-Mitchell's argument would be to turn this settled legal proposition on its head. By simply asserting that he cannot pay the filing fee, Deen-Mitchel could strip from the court the ability to direct payment of that fee as a pre-condition to litigation and the plaintiff could effectively by-pass the provisions of the PLRA, which denies the privilege of filing lawsuits without payment of filing fees to inmates like Deen-Mitchell who have been found to be frequent, frivolous filers.

Nor do we believe that this decision requiring him to pay this filing fee after five years results in any manifest injustice that must be corrected. Deen-Mitchell's current filing fee dilemma is not the product of some manifest injustice, as he suggests. Rather, it is a direct result of the plaintiff's longstanding history of frivolous litigation. Viewed in this light, Deen-Mitchell has only himself to blame for this dilemma. Yet, while insisting that Deen-Mitchell comply with this legal requirement after five years does not do an injustice to the plaintiff, allowing him to maintain this lawsuit indefinitely against more than 70 individual defendants without complying with this threshold requirement prescribed by statute does work a hardship and an injustice upon those named as defendants by Deen-Mitchell. These named defendants are effectively unable to secure closure in this litigation due to Deen-Mitchell's past frivolous filings and current inability or unwillingness to pay the filing fee set by law.

In sum, finding no grounds for reconsideration of this motion directing Deen-Mitchell to pay the filing fee, this motion will be denied.

Likewise, Deen-Mitchell's motion for sanctions will also be denied. The premise of this sanctions motion is that Deen-Mitchell has not personally received the funds that the Government has shown were issued to him and placed on deposit by the D.C. Department of Corrections in 2016. Deen-Mitchell also insists that his personal inability to trace the funds, which were evidently deposited by the D.C.

Department of Corrections, somehow constitutes sanctionable misconduct by the Government.

We disagree. In considering this motion for sanctions we begin with the proposition that:

> The standards governing motions for sanctions are familiar ones. With respect to such motions, our exercise of discretion in this instance is guided by settled case law describing the responsibilities of the court when considering sanctions against parties. At the outset, it is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it. See, e.g., Tracinda Corp. v. DaimlerChrysler *AG,* 502 F.3d 212, 242 (3d Cir.2007). Indeed, the inherent power of the court to act in this area has long been recognized by the United States Supreme Court, which has held that:
>
>> It has long been understood that "[c]ertain implied powers must necessarily result to our courts of justice from the nature of their institution," powers "which cannot be dispensed with in a court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 13881389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc. 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

Sanctions decisions rest in the sound discretion of the court and a decision denying a motion for sanctions may only be reviewed for abuse of discretion, which will be found only where "the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir.2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir.1999)).

In addition to the court's inherent authority, "Rule 11 authorizes imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose, e.g., 'to harass or to cause unnecessary delay or needless increase in the cost of litigation.' See Landon, 938 F.2d at 452. Rule 11 sanctions are based on " 'an objective standard of reasonableness under the circumstances.' " *Id.* at 453 n. 3 (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir.1988)). Bad faith is not required. Id.; Jones, 899 F.2d at 1358." *Martin v. Brown,* 63 F.3d 1252, 1264 (3d Cir.1995). Furthermore, it is well-settled under Rule 11 that: "Sanctions are to be applied only 'in the "exceptional circumstance" where a claim or motion is patently unmeritorious or frivolous.' Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir.1988) (citation omitted). Rule 11's 'primary purpose is not "wholesale fee shifting but [rather] correction of litigation abuse .' " Id. (alteration in original) (citation omitted). It 'must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute,' and it 'should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.' Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir.1988) (citation omitted)." Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir.2010), as amended (Dec. 7, 2010).

United States v. Bogart, No. 4:12-CV-347, 2014 WL 7466598, at *2 (M.D. Pa. Dec. 8, 2014).

Judged by these benchmarks, we conclude that there simply is no basis for the imposition of sanctions in this case. Nothing in the notice filed by the Government is demonstrably incorrect. Quite the contrary, that notice seems to plainly indicate that funds were transferred to Deen-Mitchell and those funds were endorsed for deposit by the D.C. Department of Corrections. While Deen-Mitchell may have some concerns regarding how D.C. officials credited those funds, the Government's representations regarding the efforts to transfer those moneys remain uncontradicted. In any event, as we have noted, the transfer of these funds is ultimately irrelevant to the issue of Deen-Mitchell's legal duty to comply with longstanding orders directing him to pay the filing fee if he wishes to continue to pursue this lawsuit. Recognizing that sanctions are to be applied only in the exceptional circumstance where a claim is patently unmeritorious or frivolous, Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir.1988), Deen-Mitchell has not shown that sanctions are warranted here, and his motion for sanctions will be denied.

An appropriate order follows.

### III. Order

For the foregoing reasons, IT IS ORDERED as follows:

1. The plaintiff's motions for relief from judgment and for sanctions, (Docs. 189, 191) are DENIED.

2. On or before **August 9, 2019**, the plaintiff shall pay the filing fee prescribed by law, as previously ordered by the district court.

3. If the plaintiff does not pay the filing fee in a timely manner, the plaintiff is placed on notice that the undersigned may recommend dismissal of this lawsuit.

So ordered this 8th day of July 2019.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge